UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TAJAH S. MCCLAIN,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :    Case No. 3:18-cv-454 (VAB) |
| | : |
| SCOTT SEMPLE, COMMISSIONER<br>OF CORRECTION, ET AL.,<br>    *Defendants*. | :<br>:<br>: |

**INITIAL REVIEW ORDER AND RULING ON MOTION FOR STATUS OF SERVICE**

Tajah Mcclain ("Plaintiff"), currently confined at Corrigan-Radgwoski Correctional Institution ("Corrigan") in Uncasville, Connecticut, has filed a Complaint against Commissioner Scott Semple,[1] Warden Scott Erfe and Jane Ventrella, BSN, RN. Compl., ECF No. 1 (Mar. 16, 2018). Mr. Mcclain has also filed a motion for status of service of the Complaint. Mot. for Status of Service, ECF No. 13 (Oct. 2, 2019).

For the reasons set forth below, Mr. Mcclain's claims against Commissioner Semple and Warden Erfe will be **DISMISSED**, and all claims for declaratory and injunctive relief will be **DISMISSED**. The Court will permit his claims for damages against Nurse Ventrella to go forward.

Mr. Mcclain's motion for status of service will be **DENIED** as moot.

---

[1] Mr. Mcclain has named "Scott Simple" as a defendant, when in fact the defendant former Commissioner's name is "Scott Semple." The Court will use the correct spelling. The Clerk of Court is requested to amend the docket case caption to reflect the correct spelling of Defendant's name. *See Ayuso v. Semple*, No. 3:18-cv-116 (JAM), 2019 WL 2491628, at *1 (D. Conn. June 14, 2019) (correcting defendant Scott Semple's name from "Simple" to "Semple" in an Initial Review Order of a prisoner's complaint).

I.     FACTUAL AND PROCEDURAL BACKGROUND

   A.  FACTUAL ALLEGATIONS

In May 2017, Mr. Mcclain, then-incarcerated at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut, allegedly experienced "very painful and intense headaches in the area of [his] eye sockets" because he was unable to wear his eyeglasses. Compl. at 3 ¶ 1.

On May 31, 2017, Mr. Mcclain allegedly submitted an inmate request seeking to have his eyes checked and his glasses fixed. *Id.* Mr. Mcclain allegedly subsequently visited the medical department, where a medical staff member took his blood pressure. *Id.* ¶ 2. The staff member allegedly sent Mr. Mcclain back to his housing unit without providing him with any treatment or medication for his symptoms of painful headaches. *Id.*

On June 4, 2017, Mr. Mcclain allegedly received a notice indicating that he would have to wait a year to receive any treatment for his painful headaches and to have his eyeglasses repaired. *Id.* ¶ 3.

On June 12, 2017, Mr. Mcclain allegedly submitted another request to be seen in the medical department because the pain in the area of his eye sockets was unbearable. *Id.* ¶ 4. A medical staff member allegedly spoke to the Plaintiff in the medical department and indicated that he could not be seen by a doctor for a year regarding his complaints and suggested that he stop watching television until he could be seen by a doctor. *Id.* The staff member allegedly did not provide Mr. Mcclain with any treatment or medication to alleviate his pain symptoms. *Id.*

On August 9, 2017, Mr. Mcclain allegedly filed an inmate grievance. *Id.* ¶ 5.

On September 21, 2017, Nurse Ventrella allegedly returned Mr. Mcclain's form without disposition but acknowledged Mr. Mcclain's claims of pain and advised him to write to the medical department and request to have his eyeglasses repaired. *Id.* at 3–4 ¶ 6.

On October 24, 2017, Mr. Mcclain allegedly sent a request to Nurse Ventrella asking her to give his grievance a disposition so that he could file an appeal of the grievance. *Id.* ¶ 7. Nurse Ventrella allegedly did not respond to Mr. Mcclain's request. *Id.*

**B. PROCEDURAL HISTORY**

On March 16, 2018, Mr. Mcclain filed this lawsuit while still incarcerated at Cheshire. Compl.

On July 26, 2018, Mr. Mcclain moved to amend his prayer for relief to change the amount in demand and the Defendants listed for the specific relief. Mot. to Amend, ECF No. 10 (July 26, 2018).

On November 6, 2018, the Court granted Mr. Mcclain's motion to amend his request for relief. Order Granting Mot. to Amend, ECF No. 11 (Nov. 6, 2018).

On June 18, 2019, Mr. Mcclain filed a notice of change of address to inform the Court that he had been transferred to the Gardner Correctional Institution ("Gardner") in Newtown, Connecticut. Notice of Change of Address, ECF No. 12 (June 18, 2019) ("First Notice").

On October 2, 2019, Mr. Mcclain filed a request for an update as to whether Defendants had been served. Mot. for Status of Service.

On October 29, 2019, Mr. Mcclain filed another notice of change of address to inform the Court that he had been transferred to Corrigan. Notice of Change of Address, ECF No. 14 (Nov. 1, 2019) ("Second Notice").

##    II.      STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation

of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III.  DISCUSSION

Mr. Mcclain contends that Nurse Ventrella was deliberately indifferent to his serious medical need in violation of the Eighth Amendment and failed to properly dispose of his medical grievance in violation of his Fourteenth Amendment due process rights. Compl. at 6. He sues Warden Erfe and Commissioner Semple in their official capacities and Nurse Ventrella in her individual and official capacity, *id.* at 2, and seeks compensatory and punitive damages and declaratory and injunctive relief, Mot. to Amend.

#### A.  Claims for Injunctive Relief Under § 1983

"An inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *see also Sossamon v. Texas*, 563 U.S. 277, 304 (2011) (noting that "[a] number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits").

All of Mr. Mcclain's allegations involve conduct that took place at Cheshire. Mr. Mcclain, however, is no longer at Cheshire, having been transferred to Gardner in June 2019, First Notice, and to Corrigan in October 2019, Second Notice.

Accordingly, Mr. Mcclain's claims for injunctive relief will be dismissed. *See* 28 U.S.C. § 1915A(b)(1) (in an initial review of a civil action by an incarcerated person, "the court shall . . . dismiss . . . any portion of the complaint, if the complaint—(1) . . . fails to state a claim upon which relief may be granted.").

### B. Commissioner Semple and Warden Erfe

"A prison official cannot be personally liable under § 1983 on the basis of *respondeat superior* or simply because he is atop the prison hierarchy. Rather, a prison official must have some degree of personal involvement in an alleged constitutional deprivation to be personally liable." *Lewis v. Cunningham*, 483 F. App'x 617, 618–19 (2d Cir. 2012) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995)).

Mr. McClain alleges that Scott Semple, as the Commissioner of the Department of Correction, is responsible for the operation of each prison facility, including Cheshire Correctional Institution. *Id.* He alleges that Scott Erfe, as the Warden of Cheshire, is responsible for the operation of Cheshire and the welfare of the inmates housed at Cheshire. He does not mention either Defendant in the body of his Complaint but seeks an injunction ordering both Defendants to "stop the process of having prisoners wait a one-year time period, [w[h]e[]ther they're in pain or not, to see a[n] eye doctor." *Id.* at 7.

Mr. Mcclain has not alleged that either Commissioner Semple or Warden Erfe was personally involved in the alleged constitutional deprivation at issue here. He has not even alleged that they were aware of Mr. Mcclain's medical condition or his requests for treatment

submitted to the medical department or the medical grievance that he submitted to Nurse Ventrella. As a result, Mr. Mcclain has not alleged that either Commissioner Semple or Warden Erfe violated his constitutionally or federally protected rights.

Accordingly, the claims against Commissioner Semple and Warden Erfe will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C. Nurse Ventrella—Fourteenth Amendment Claim

The Second Circuit has held that neither state directives nor "state statutes . . . create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). "It is well established [] that inmate grievance[] procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell,* 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) (collecting cases); *see also Fernandez v. Armstrong*, No. 3:02-cv-2252 (CFD), 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures [set forth in Administrative Directive 9.6] is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right."); *Garcia v. Semple*, No. 3:18-cv-1226 (SRU), 2019 WL 5597771, at *16 (D. Conn. Oct. 30, 2019) (dismissing an incarcerated plaintiff's due process claims that prison officials did not respond to his grievances and appeals in a timely manner). In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [the plaintiff's] grievances by conducting a

thorough investigation to his satisfaction does not create a cause of action for denial of due process because [the plaintiff] was not deprived of a protected liberty interest.")).

Mr. Mcclain alleges that Nurse Ventrella violated his due process rights when she refused to act on his grievance seeking medical treatment and instead returned it to him without disposition. Compl. at 6. In his view, Nurse Ventrella's refusal to dispose of his grievance constituted an attempt by her to prevent him from exhausting the grievance procedures. *Id.*

But as explained above, these allegations do not state a claim of a violation of an incarcerated person's constitutional rights. Thus, to the extent that Mr. Mcclain claims that Nurse Ventrella failed to process or respond to his medical grievance or his grievance appeal properly, in accordance with the Department of Correction's grievance procedures, such a claim does not rise to the level of a violation under the Fourteenth Amendment. *See Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("[Mr.] Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.").

Accordingly, Mr. Mcclain's Fourteenth Amendment due process claim against Nurse Ventrella regarding the disposition of his medical grievance will be dismissed under 28 U.S.C. § 1915A(b)(1).

### D. Nurse Ventrella—Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Under the Eighth Amendment, prison officials are required to "ensure that inmates receive adequate food, clothing, shelter and medical care" and that they

are confined in "safe[]" living conditions. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).

The Supreme Court and the Second Circuit have held that deliberate indifference by prison officials to a prisoner's serious medical or dental needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance*, 143 F.3d at 702. To state a Section 1983 claim for deliberate indifference to a serious medical or dental need, a plaintiff must meet a two-pronged test, requiring an analysis of the claim both objectively and subjectively.

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim.

*Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (internal quotations omitted).

Under the subjective prong, the action or inaction of a prison official, medical staff member, or other health care provider must have constituted recklessness. *See Salahuddin*, 467 F.3d at 279–80. The official must have been actually aware of a substantial risk that the inmate

9

would suffer serious harm as a result of his or her actions or inactions. *Id.* at 280. Mere negligent conduct does not constitute deliberate indifference. *See id.* ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.").

Mr. Mcclain alleges that Nurse Ventrella violated his Eighth Amendment right to receive medical treatment when she returned his grievance without resolving it. Compl. at 6. He contends that Nurse Ventrella's failure to process or act on his grievance caused him to suffer pain, pounding headaches, and a deterioration of his vision. *Id.* Mr. Mcclain also alleges generally that the denial of his medical care and the direction that he wait one year for treatment "caused [him] to have to suffer with [] pain, vision get[t]ing worse, [and] ac[h]ing and pounding head[]ac[h]es," which have continued until the date of his filing his Complaint. *Id.*

"The Second Circuit has held that the deprivation of prescription eyeglasses may satisfy the objective prong of the deliberate indifference standard." *Lexis v. Bellemare*, No. 3:18-cv-1403 (JAM), 2019 WL 1596571, at *4 (D. Conn. Apr. 15, 2019) (citing *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (reversing conclusion that sightlessness and headaches from confiscation of eyeglasses was not serious medical need)). In *Koehl*, the Second Circuit noted that "visual deficiencies" caused by deprivation of prescription eyeglasses "can readily cause a person to fall or walk into objects." 85 F.3d at 86 (noting that the plaintiff had alleged such circumstances). Courts in the Second Circuit have found that an incarcerated plaintiff's allegations that a lack of prescription eyeglasses have caused deteriorating vision and pain are sufficient to state a claim of deliberate indifferent to medical needs under the Eighth Amendment. *See, e.g.*, *Myrie v. Calvo/Calvoba*, 591 F. Supp. 2d 620, 627 (S.D.N.Y. 2008) (finding that plaintiff's allegations that his "vision deteriorated and he suffered from headaches

and eyestrain" met the objective prong of an Eighth Amendment claim at the motion to dismiss stage[2]); *Amaker v. Goord*, No. 98 CIV. 3634 (JGK), 1999 WL 511990, at *8 (S.D.N.Y. July 20, 1999) (finding that allegations that plaintiff's "eyesight deteriorated significantly, he experienced eyestrain and fatigue, and he was forced to go without glasses for a period of months" were "sufficiently serious" to meet the objective prong of an Eighth Amendment claim).

Accordingly, Mr. Mcclain's allegations that he has suffered headaches and worsening vision due to his lack of eyeglasses and months-long delay in treatment are sufficient to meet the objective prong of an Eighth Amendment claim.

As for the subjective prong, Mr. Mcclain alleges that Nurse Ventrella returned his grievance "without disposition," acknowledged the pain he had been in, and suggested that Mr. Mcclain submit a new request to the medical department for treatment of his symptoms and to have his glasses repaired. Compl. at 3 ¶ 6. He also alleges that Nurse Ventrella "was well aware of the head and eye pain I was having through my consistent request for care." *Id.* at 2. Construing Mr. Mcclain's allegations liberally, as the Court must, *see Sykes*, 723 F.3d at 403 (Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the

---

[2] The court in *Myrie* noted that the seriousness of a medical condition may be reassessed after discovery:

> I appreciate that, once plaintiff's condition is fleshed out in more detail, it may turn out that the damage to his eyes from waiting a few extra weeks for glasses may not rise to the level of a constitutional injury. In *Davidson v. Scully*, No. 81 Civ. 0390, 2001 WL 963965 at *6–8 (S.D.N.Y. Aug. 22, 2001), the district court granted defendants' motion for summary judgment on an inadequate medical care claim. The court found that because plaintiff's eye condition, which resulted in blurry vision, headaches and tearing, was not "one of degeneration or extreme pain," it was not sufficiently serious. *Id.* at **7–8. But *Davidson* was decided on a motion for summary judgment. That is not the procedural posture of this case.
>
> Therefore, the eyeglass claim cannot be dismissed on a pre-answer motion for failure to state a claim.

591 F. Supp. 2d at 627.

strongest arguments that they suggest."), Mr. Mcclain has met the subjective prong of an Eighth Amendment claim by alleging that Nurse Ventrella was actually aware of his serious medical condition and failed to take action despite knowing there was a substantial risk that he would suffer serious harm as a result.

Accordingly, Mr. Mcclain's Eighth Amendment claims for damages against Nurse Ventrella will be permitted to go forward. As explained above, claims for injunctive relief against Nurse Ventrella are dismissed.

## ORDERS

The Court enters the following orders:

(1) The Clerk of Court is requested to amend the docket case caption to change "Scott Simple" to "Scott Semple," reflecting the correct spelling of Defendant's name.

(2) All claims against Defendants Semple and Erfe are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

(3) The Clerk of Court shall verify the current work addresses for Nurse Ventrella with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint, ECF No. 1, the motion to amend prayer of relief, ECF No. 10, and this Order to Nurse Ventrella at the confirmed address by **May 15, 2020**, and report to the Court on the status of the waiver requests by **May 29, 2020**. If Nurse Ventrella fails to return the waiver request, the Clerk of Court shall make arrangements for in-person service by the U.S. Marshals Service on her, and she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(5) Nurse Ventrella shall file her response to the Complaint, either an Answer or motion to dismiss, by **July 10, 2020**. If she chooses to file an Answer, she shall admit or deny the allegations and respond to the cognizable claims recited above. She may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, under Fed. R. Civ. P. 26-37, shall be completed by **November 13, 2020**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **December 18, 2020**.

(9) Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) **If Mr. Mcclain changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case.** Mr. Mcclain must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Mcclain has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

(11)     Because the Court has here issued an Initial Review Order and ordered service on Defendant Nurse Ventrella, Mr. Mcclain's motion for status of service, ECF No. 13, is **DENIED** as moot.

SO ORDERED at Bridgeport, Connecticut this 20th day of April, 2020.

_____/S/_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE