UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
TAJAH S. MCCLAIN              :    Civ. No. 3:18CV00454(SALM)
                              :
v.                            :
                              :
JANE VENTRELLA                :    February 7, 2022
                              :
------------------------------x
```

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Tajah S. McClain ("plaintiff"), a sentenced inmate[1] at MacDougall-Walker Correctional Institution, brought this action relating to events occurring during his incarceration at Cheshire Correctional Institution ("Cheshire CI"). The Complaint named as defendants Jane Ventrella, BSN, RN, former Health Services Coordinator at Cheshire CI ("defendant" or "Ventrella"); Scott Semple, former Commissioner of the Connecticut Department of Correction ("DOC"); and Scott Erfe, Warden of Cheshire CI. Defendants Semple and Erfe were dismissed

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that McClain was sentenced on February 27, 2013, to a term of imprisonment that has not expired. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=232694 (last visited Feb. 7, 2022).

from this action at the initial review stage. See Doc. #15 at
12. The only claim remaining is an Eighth Amendment deliberate
indifference to serious medical needs claim, for monetary
damages, against Ventrella in her individual capacity. See id.

Pursuant to Federal Rule of Civil Procedure 56(a),
Ventrella moves for summary judgment on the remaining claim
against her. See Doc. #36. Plaintiff, now represented by
appointed pro bono counsel, has filed a memorandum in
opposition. See Doc. #50. For the reasons set forth below,
defendant's Motion for Summary Judgment is **GRANTED.**

## I.   BACKGROUND

Defendant moves for summary judgment on the grounds that
(1) the undisputed evidence of record reveals that plaintiff
cannot sustain his claim, as a matter of law, and (2) plaintiff
is barred from bringing this claim because he has not exhausted
his administrative remedies as required by the Prison Litigation
Reform Act, 42 U.S.C. §1997e(a). See Doc. #36-1 at 1. Plaintiff
responds that (1) there is a genuine issue of material fact
regarding his claim of deliberate indifference to his serious
medical needs, see Doc. #50 at 7-10, and (2) he exhausted his
available administrative remedies because he could take no
further action after Ventrella returned his HSR without
disposition. See id. at 4-7.

The following facts are derived from the parties'
submissions pursuant to Local Rule 56(a) and the affidavits,
declarations, and exhibits attached thereto.

"On or about May 31, 2017, Plaintiff requested to be seen
by medical staff because he was suffering from headaches and
pain around his eye sockets and because his eye glasses were
broken." Doc. #50-1 at 6, ¶1.

Plaintiff asserts: "In response to the request, Plaintiff
was seen by a nurse who checked his blood pressure and returned
him to the unit." Id. at ¶2. The medical record that appears to
correspond to this visit, which occurred on June 5, 2017,
indicates that the RN who conducted the appointment identified
plaintiff's chief complaint as "I need to have my eyes checked
old glasses issue[d] 5/20/13[.]" Doc. #37 at 24. The nurse
checked plaintiff's vital signs, including temperature, pulse,
breathing, and blood pressure; confirmed that the sclera of his
eyes were "white"; reviewed the treatment plan with plaintiff;
and advised him to return to the clinic with any further
concerns. See id. at 24-25.

"On June 4, 2017, plaintiff was notified that he was on a
list to have his glasses repaired and, in the meantime, should
refrain from watching television." Doc. #50-1 at 6, ¶3.

Plaintiff alleges in his Complaint that on June 12, 2017,
he was still dealing with significant pain, so he "requested to

be seen by someone again." Doc. #1 at 3, ¶4. On or about that
date,[2] plaintiff filed a CN9601 "Inmate Request Form" that
stated:

> I was down there last week for a eye exam. I understand
> there isn't a doctor on hand, but because I don't have
> my glasses I am getting bad headaches that causes my eye
> socket to pulsate and I could feell in the back of my
> Head. I already have motrin. I need to see a doctor.

Doc. #37 at 11 (sic). The response section of this form states:
"Seen[.]" Id.

The record reflects that plaintiff was in fact seen by
medical on June 13, 2017. See Doc. #50-1 at 2, ¶1; Doc. #37 at
22-23. At that visit, the nurse described plaintiff's chief
complaint as: "I am having [headaches] because my glasses are
broken." Doc. #37 at 22. The nurse checked plaintiff's vital
signs, including temperature, pulse, breathing, and blood
pressure. See id. She stated: "Reports his glasses [are] broken
and need to be fixed. He states he received notification
recently stating his glasses would be repaired in 12 months.
Mild [headache] only when watching television. Denies ... blurry
vision [and] photophobia." Doc. #37 at 23. The nurse recommended
that plaintiff use a cold compress on his forehead. See id.;
Doc. #50-1 at 6, ¶5.

---

[2] Plaintiff dated this form "7-12-17" but the "received" stamp
applied by DOC reflects a date of June 13, 2017. See Doc. #37 at
11.

On August 9, 2017, plaintiff filed a Health Services Review ("HSR"), asking to be seen by an eye doctor. See Doc. #36-4 at 7. The HSR reads as follows:

> I've requested eye doctor help on numerous occasions, being that I have been feeling some really bad pain and getting some really intense headaches, which I have never had before. Still I haven't seen a doctor, although the pain still comes and go. My last request for help was 3 weeks ago in the month of July. I never received a response, nor did I ever get my request back. My first request was on 5-31-2017 (see) Request attached. I was called down, my blood pressure was checked only by a Nurse. I was charged and sent back to the block still in pain. 6/4/2017 I received a letter (Notice) there would be NO help for a year. Again, on 6-12-07 after being unable to bare the pain still occurring in the exact area I requested to be seen by someone (see) attached request. I was called down to medical to be only told, to stop watching television until my year wait to see a doctor was up. The Remedy I am requesting is to see a Eye doctor in this next month of September. Thank you!

Id. (sic).

This HSR was received on September 21, 2017, by "Ventrella, who was the Health Services Remedy Coordinator ("HSRC") at Cheshire Correctional Institution ("CCI") at that time." Doc. #50-1 at 3, ¶3. Ventrella submitted an affidavit indicating that she "reviewed McClain's medical file in order to respond to the health service review." Doc. #36-4 at 3, ¶11; see also Doc. #37 at 21 (clinical record note signed by Nurse Ventrella and dated September 21, 2017, at 7:30 p.m., stating: "Health record reviewed for Administrative Remedy AR #15367 filed under correspondence section."); cf. Doc. #36-4 at 7 (HSR bearing

number 15367). This assertion is deemed admitted by plaintiff.[3] In reviewing these records, Ventrella "saw that Plaintiff had been seen twice for his headaches[.]" Doc. #50-1 at 3, ¶7. The reports of those visits are in the record. See Doc. #37 at 22-23, 24-25.

Ventrella returned the HSR "without disposition[]" with the explanation: "You have been added the the eye doctor list and will be called when it is your turn. You stated to nurse headaches watching television. If your glasses have not been fixed please write medical to have them assessed." Doc. #36-4 at 7 (sic). Defendant also told plaintiff "to purchase Tylenol from the commissary for his pain[.]" Doc. #50-1 at 4, ¶8.

The HSR form has two options available for the reviewer to select: "You have exhausted DOC's Administrative Remedies[]" or "This matter may be appealed[.]" Doc. #36-4 at 7. Ventrella did not check either of those boxes. See id. "Plaintiff did not file any HSR's regarding RN Ventrella's conduct between September 21, 2017 and March 16, 2018, when he filed this action." Doc. #50-1

---

[3] Defendant asserted the following material fact: "Ventrella reviewed Plaintiff's medical file while reviewing the HSR." Doc. #36-2 at 1, ¶6. Plaintiff responded: "Plaintiff can neither admit nor deny Nurse Ventrella's actions." Doc. #50-1 at 3, ¶6. "Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted." Miron v. Town of Stratford, 976 F. Supp. 2d 120, 127 (D. Conn. 2013). The Court deems this fact admitted.

at 5, ¶16 (sic). However, plaintiff contends that he "file[d] a request for proper disposition of the HSR which Nurse Ventrella decided so that he could appeal, in accordance with Administrative Directive 8.9." Id. at 5-6, ¶16.

Plaintiff ultimately saw an ophthalmologist "on at least two separate occasions" in 2019. Doc. #50-2 at 2, ¶5; see also Doc. #50-1 at 7, ¶11. He "was advised that he suffers from glaucoma and will need treatment, either in the form of daily eye drops or surgery." Doc. #50-1 at 8, ¶12.

## II.  **STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth

Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

## III. DISCUSSION -- DELIBERATE INDIFFERENCE

Defendant contends that she is entitled to judgment as a matter of law, because (1) plaintiff's condition was not a serious one, and (2) "there is simply no evidence to suggest that [she] was deliberately indifferent to Plaintiff's serious medical needs. Rather, she took all appropriate action that she was able to take in response to Plaintiff's HSR and was not actually aware that Plaintiff would be at risk of substantial harm." Doc. #36-1 at 10. Plaintiff responds that he "was not suffering merely with 'mild headaches' when 'watching television' as claimed by the Defendant[,]" Doc. #50 at 9, and that "[a] trained nurse should certainly have been aware that [plaintiff's] symptoms could be indications of a condition or

affliction that would pose a substantial risk of serious harm to the Plaintiff if left untreated for a year." Id. at 10.

As a sentenced inmate, plaintiff's claim for deliberate indifference to a serious medical need is actionable pursuant to the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). The Supreme Court has held that

> deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) (citations, quotation marks, and footnotes omitted). "[N]ot every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when two requirements are met." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citation and quotation marks omitted). The first requirement is objective, while the second is subjective. See id. at 279-80 Under the objective prong, "the alleged deprivation of adequate medical care must be sufficiently serious." Id. at 279 (citation and quotation marks omitted). The subjective prong requires a showing that the defendant had a "sufficiently culpable state of mind[.]" Morgan v. Dzurenda, 956

F.3d 84, 89 (2d Cir. 2020) (citation and quotation marks omitted).

In applying these standards, it is essential to remember that Ventrella can be held liable under §1983 only for her own actions, and for events in which she had personal involvement. See, e.g., Ostensen v. Suffolk Cnty., 236 F. App'x 651, 652 (2d Cir. 2007) (A defendant who did not participate in the allegedly illegal acts "cannot be liable under §1983 based on any direct involvement."); Alke v. Adams, 826 F. App'x 4, 6 (2d Cir. 2020) (finding dismissal of "medical indifference claims" proper where plaintiff "failed to plead sufficient facts indicating that" the defendants "were personally involved in" his treatment). Here, it is not disputed that Ventrella had a role in reviewing plaintiff's treatment. But it also is not disputed that her role was extremely limited. The evidence of record establishes that the only involvement Ventrella had with McClain's claims of headaches and eye problems was her receipt, review, and processing of the HSR on September 21, 2017. See, e.g., Doc. #50-2 at 2, ¶4 (plaintiff's affidavit indicating that he was transferred to a different facility "[s]hortly after" he filed this action in March 2018); Doc. #36-4 at 4, ¶18 (Ventrella affidavit: "I had no further involvement with McClain's treatment for any eye related or glasses related issues after the resolution of this HSR."). Thus, the Court's consideration

of whether Ventrella was deliberately indifferent to a serious medical need of McClain's is limited to her conduct in connection with that September 21, 2017, HSR.

A.   **Objective Element**

Under the objective element, a plaintiff must establish both that (1) he was "actually deprived of adequate medical care[,]" and (2) his medical condition was "sufficiently serious[.]" Thomas v. Wolf, 832 F. App'x 90, 92 (2d Cir. 2020) (citation and quotation marks omitted).

Plaintiff does not contend that he never received treatment for his headaches, or that Ventrella did not refer him for specialist care. Rather, he appears to claim that the delay in seeing the eye doctor was so unreasonably long that it constituted a violation of his Eighth Amendment rights. See Doc. #50-1 at 2, ¶1 ("Defendant admits he was seen by medical staff on June 13, 2017[.]"); id. at 7, ¶11 ("In 2019, Plaintiff was seen on at least two occasions by an ophthalmologist or ophthalmologists at UCONN Health Center in Farmington, Connecticut."); see also Doc. #37 at 22-25 (treatment notes showing plaintiff was seen by medical staff for concerns related to his glasses and headaches on June 5, 2017, and June 13, 2017). Plaintiff appears to argue that defendant's conduct with respect to the HSR was deliberately indifferent to his serious medical needs because she did not ensure he saw an eye doctor

immediately. See Doc. #50-1 at 4, ¶9 ("Plaintiff admits he was told he was added to a list to see an ophthalmologist but has no information as to what the soonest possible appointment would have been or if he could have been seen sooner if his symptoms had been reported.").

"[A] prolonged delay in treatment could support an inference of deliberate indifference." Hernandez v. Keane, 341 F.3d 137, 146 (2d Cir. 2003). Where a plaintiff alleges a delay in treatment, rather than a lack of treatment, "the seriousness inquiry focuses on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." Hanrahan v. Mennon, 470 F. App'x 32, 33 (2d Cir. 2012) (citation and quotation marks omitted). Assuming therefore that glaucoma is a serious medical condition, the Court considers the particular risk of harm to McClain from the delay arising out of Ventrella's failure to refer him to an eye doctor on an emergency, immediate basis, rather than simply putting him on the list to be seen in his turn.

Plaintiff has presented no evidence that any delay he experienced in seeing an eye doctor presented a serious risk of harm, or caused any such harm. The only evidence of any worsening of plaintiff's condition is the following statement: "I was advised that I am suffering from glaucoma and will need

treatment, either in the form of daily eye drops or surgery." Doc. #50-2 at 2, ¶6. Indeed, plaintiff presents no evidence regarding the actual length of the delay before he saw an eye doctor, whether his headaches in 2017 were early symptoms of his glaucoma, or whether earlier treatment would have had any impact on the development of plaintiff's condition. Accordingly, plaintiff has failed to produce evidence sufficient, if credited by the jury, to support the objective element of a claim for deliberate indifference to serious medical needs.

### B.   Subjective Element

Even if plaintiff had produced evidence sufficient to establish the objective element, his claim fails, because he has produced no evidence that could support the subjective element.

Under the subjective element, "an inmate must prove that (i) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need, and (ii) that the medical-care provider actually drew that inference. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need." Dallio v. Hebert, 678 F. Supp. 2d 35, 61 (N.D.N.Y. 2009) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994); Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); Ross v. Giambruno, 112 F.3d 505 (2d Cir. 1997)). "Mere disagreement over choice of treatment, or even a claim that

negligence or medical malpractice has occurred, does not create a constitutional claim." Stevens v. Goord, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008) (collecting cases). "[T]he mere malpractice of medicine in prison does not amount to an Eighth Amendment violation." Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000). This includes "a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial[.]" Id.

Likewise, "disagreements over medications, diagnostic techniques..., forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." Randle v. Alexander, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013) (citation and quotation marks omitted) (emphasis added).

Here, there is no evidence that Ventrella was or should have been aware of a serious medical need and intentionally disregarded it. Plaintiff presented as having headaches secondary to his glasses being broken. See, e.g., Doc. #37 at 24 (June 5, 2017, medical report stating plaintiff asserted: "I need to have my eyes checked old glasses[.]"); id. at 11 (plaintiff's June 12, 2017, inmate request form stating:

("[B]ecause I don't have my glasses I am getting bad headaches[.]"); id. at 22 (June 13, 2017, medical report stating plaintiff asserted: "I am having [headaches] because my glasses are broken[.]").

Plaintiff contends: "At the time of the HSR, ... Plaintiff had been suffering from severe headaches and unbearable pain in his eyes for more than two months." Doc. #50 at 9. Ventrella reviewed plaintiff's claims in the HSR of "really intense headaches[]" and "really bad pain[.]" Doc. #36-4 at 7. She also reviewed the records described above, regarding plaintiff's claims of headaches related solely to his glasses. In sum, Ventrella reviewed all of the relevant records, and considered plaintiff's complaints. She arranged for him to see an eye doctor by putting him on the list for such treatment. Plaintiff believes that she should have ensured that he was seen by an eye doctor immediately, but that is a decision that falls within Ventrella's medical judgment. Plaintiff has "failed to rebut the presumption of validity afforded to the judgment of" Ventrella. St. Pierre v. Tawanna, No. 3:14CV01866(VAB), 2018 WL 4078274, at *8 (D. Conn. Aug. 27, 2018). "[H]e has not offered any evidence of such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. (citation and quotation marks omitted). "Under

even the most sympathetic reading, [Ventrella's] actions would, at most, constitute negligence." <u>Pettus v. Lemmott-Taylor</u>, 219 F. App'x 81, 82 (2d Cir. 2007).

The Court finds that Ventrella has met her burden at summary judgment by pointing "to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Goenaga</u>, 51 F.3d at 18. Ventrella has pointed to the lack of evidence to support either the objective <u>or</u> the subjective element of a deliberate indifference claim. Accordingly defendant's motion for summary judgment is granted.[4]

IV.  <u>**CONCLUSION**</u>

For the reasons set forth herein, defendant's Motion for Summary Judgment [**Doc. #36**] is **GRANTED**.

Judgment shall enter in favor of defendant Jane Ventrella. The Clerk shall close this case.

---

[4] In light of the Court's finding as to the substantive issues, it need not reach the failure to exhaust argument raised by defendant. <u>See</u> <u>Terbush v. Mitchell</u>, No. 3:15CV01339(SALM), 2017 WL 663198, at *7 (D. Conn. Feb. 17, 2017) (granting summary judgment because "defendant has sustained his summary judgment burden by pointing to an absence of evidence which would support the subjective requirement of plaintiff's Eighth Amendment claim[]" and therefore declining to address defendant's exhaustion argument).

It is so ordered this 7th day of February, 2022, at New
Haven, Connecticut.

```
        /s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
```